IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:21CR152 |
| | ) | |
| Plaintiff, | ) | |
| | ) | **BRIEF IN SUPPORT OF** |
| v. | ) | **MOTION TO SUPPRESS** |
| | ) | **STATEMENTS** |
| JOSE RAMON CISNEROS PEREZ, | ) | |
| | ) | |
| | ) | |
| Defendant. | | |

The Defendant, Jose Ramos Cisneros Perez, submits this brief in support of his motion to suppress statements.

On December 9, 2020 law enforcement officers executed a search warrant at Mr. Perez's home. These officers were dressed in tactical military style uniforms and gear. They had their firearms displayed during the search. Several of the officers were wearing bullet proof vests and helmets. They were commanding adherence to their directions to the occupants of the home including Mr. Perez.

Jose Perez had just turned twenty years old when the search warrant was served. He suffers from spina bifida, a birth defect which limits his mobility. He wears leg braces. This condition also has slowed his intellectual development. While he recently graduated from high school, he was in special education classes throughout much of his schooling.

Mr. Perez has no criminal history and had never been in trouble before law enforcement entered his home on December 9th. He is a quiet, soft spoken young man

1

whose primary language is Spanish. He was not expecting law enforcement to enter his home and question him on December 9th.

Douglas County Sheriff's Deputy Mark Dishaw contacted Mr. Perez in the living room of the home. From there, Deputy Dishaw directed Mr. Perez to his bedroom and another officer also interviewed him. No Miranda warnings were given. Mr. Perez sat on his bed with an officer seated between him and the door. Deputy Dishaw stood nearby as both officers questioned him. Both officers were dressed as previously discussed. They said Mr. Perez could leave if he wanted to. They were investigating a case and they said they needed to hear his side of the story.

**Law enforcement did not advise Perez of his Miranda rights before questioning.**

Fifty years ago the Supreme Court instructed law enforcement that prior to custodial questioning, an individual must be advised of his constitutional right not to speak and to have a lawyer present during the questioning. *Miranda v. Arizona*, 384 U.S. 568 (1961). Under *Miranda*, law enforcement officers prior to questioning must warn a defendant

> he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.

Id at 444.

Here there were no such warnings given despite obvious police interrogation. The question will thus be whether the circumstances required the giving of the Miranda warnings.

2

Miranda warnings are required where a reasonable person would not have felt at liberty to terminate the questioning and leave. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). The presence and placement of multiple officers and the brandishment of weapons can weigh in favor of a custody determination. See *New York v. Quarles*, 467 U.S. 649, 655 (1984). The Eighth Circuit has adopted a test to determine whether someone is in custody for purposes of Miranda:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; [and], (6) whether the suspect was placed under arrest at the termination of the questioning.

*United States v. Hoeffener*, 950 F.3d 1037, 1046 (8th Cir. 2020).

Here, Mr. Perez concedes he was advised he was free to leave. However, the positioning of the officers blocking his exit belies this advice. He also was not arrested at the conclusion of the questioning. However, the remaining factors from *Hoeffener* weigh in his favor.

Mr. Perez did not initiate the police contact, rather, it was started at the officers' direction during the execution of the search warrant. The nature of the interview was designed to elicit incriminating statements from an immature and inexperienced young man. These factors sufficiently distinguish *Hoeffener* and lead to the conclusion that

Mr. Perez was not free to leave. He should have been provided Miranda warnings. The failure to do so merits suppression of the statements.

### **Perez's statements were given involuntarily and should be suppressed.**

The Fifth Amendment and fundamental due process ensure that involuntary confessions cannot be used against an accused. The Supreme Court in *Jackson v. Denno*, 378 U.S. 368, 370-371 (1964) held:

> It is now axiomatic that a defendant in a criminal case is deprived of due process of law if his conviction is founded, in whole or in part, upon an involuntary confession, without regard for the truth or falsity of the confession. . . . Equally clear is the defendant's constitutional right at some stage in the proceedings to object to the use of the confession and to have a fair hearing and a reliable determination on the issue of voluntariness, a determination uninfluenced by the truth or falsity of the confession.

This sentiment is codified at 18 U.S.C. § 3501(a), which provides for a hearing to determine the voluntariness of any such confession out of the presence of the jury. Section 3501 demands the consideration of "all the circumstances surrounding the giving of a confession," including:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b).

"A statement is involuntary when it is extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004) (*quoting Simmons v. Bowersox*, 235 F.3d 1124, 1132 (8th Cir. 2001)). Courts should use a totality-of-the-circumstances test, looking to both the "conduct of the officers and the characteristics of the accused." *Id.* "The government bears the burden of persuasion and must prove by a preponderance of the evidence that the challenged statements were voluntary." *Lebrun*, 363 F.3d at 724 (*citing United States v. Astello*, 241 F.3d 965, 966 (8th Cir. 2001)).

In *Colorado v. Connelly*, 479 U.S. 157 (1986), the Supreme Court addressed the voluntariness of statements provided by defendants suffering from a mental condition. In *Connelly*, the Court concluded that, in addition to the defendant's mental condition, there must be "overreaching" or "police conduct causally related to the confession." *See Connelly*, 479 U.S. at 163, 164. The *Connelly* Court added, however, that mental condition is "surely relevant" to the individual's susceptibility to police coercion. 479 U.S. at 165.

The Eighth Circuit's totality-of-the-circumstances test focuses upon both on the conduct of the agents and the defendant's capacity to resist pressure to confess. *Astello*, 241 F.3d at 966-97. In considering the totality of the circumstances, the Eighth Circuit reviews "whether the confession was extracted by threats, violence, or direct or implied

5

promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." *Id*. Specific factors include "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004); *see also United States v. Sanchez*, 614 F.3d 876, 883 (8th Cir. 2010).

Furthermore, reliance upon leading questions to secure the confession may be considered coercive or overreaching. *See Wilson v. Lawrence County*, 260 F.3d 946, 953 (8th Cir. 2001) (*citing Spano v. New York*, 360 U.S. 315 (1959) (reversing a conviction because the confession was involuntary because of the effect of psychological coercion upon a foreign-born suspect with only a half-year of high school and a history of mental instability.))

Finally, "a totality of the circumstances analysis does not permit state officials to cherry-pick cases that address individual potentially coercive tactics, isolated one from the other, in order to insulate themselves when they have combined all those tactics in an effort to overbear an accused's will." *Wilson*, 260 F.3d at 953.

**Deputy Dishaw used leading questions**.

The Eighth Circuit, addressing the confession of a mentally-handicapped person in *Wilson v. Lawrence County,* examined a number of types of police overreaching. In concluding that the police had overreached, the Court singled out leading questions for comment, noting that, "*Of particular concern*, in addition to the general threats and

6

intimidation that may have been employed to overbear Wilson's will, is the fact that the officers relied largely on leading questions to secure this confession from Wilson." 260 F.3d at 953 (emphasis added) *(citing Spano v. New York*, 360 U.S. 315, 322 (1959) where the Supreme Court noted that an involuntary confession was not delivered in a narrative fashion but in response to "leading questions of a skillful prosecutor in a question and answer confession," and *Fikes v. Alabama*, 352 U.S. 191, 195 (1957) where the Supreme Court described an involuntary confession delivered in response to yes-or-no questions, "some of which were quite leading or suggestive.")

Obviously aware that Mr. Perez suffered from spinal bifida and was not only young but emotionally immature, Deputy Dishaw secured the "confession" using leading questions and/or by explaining to Mr. Perez what he expected the other evidence would show and by trying to get Mr. Perez to agree with it. Whenever his open-ended questions caused the interview to stall, the officers returned to leading questioning to exploit Mr. Perez's condition. This overreaching was sufficient to fulfill the requirements of *Connelly*.

## Conclusion

For the foregoing reasons, Jose Ramon Cisneros Perez respectfully requests the Court grant his Motion to Suppress Statements made by him on December 9, 2020.

DATED this 18th day of October, 2021.

JOSE RAMON CISNEROS PEREZ, Defendant,

/s/ David R. Stickman
**DAVID R. STICKMAN**
**Federal Public Defender**
222 South 15th Street
Suite 300N
Omaha, NE 68102
(402) 221-7896
Attorney for Defendant

8